FILED

12/05/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0204

DA 17-0204

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 297

ALTO JAKE HOLDINGS, LLC,

      Plaintiff and Appellee.

    v.

KEVIN DONHAM and SHALEY CLEMM,

      Defendants and Appellants.

APPEAL FROM:   District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV 17-102B
Honorable Robert B. Allison, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Brian J. Miller, Morrison Sherwood Wilson & Deola, PLLP; Helena,
Montana

      For Appellee:

          Paul A. Sandry, Mary Kate Moss, Johnson, Berg & Saxby, PLLP;
Kalispell, Montana

Submitted on Briefs:  September 20, 2017

Decided:  December 5, 2017

Filed:

_____
                 Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1      Kevin Donham and Shaley Clemm (Tenants) appeal the judgment of the Montana Eleventh Judicial District Court, Flathead County, dismissing their appeal of an underlying judgment of the Flathead County Justice Court for failure to timely file an appellate brief pursuant to Rule 14 of the Uniform Municipal Court Rules of Appeal to District Court (U. M. C. R. App.).  We restate the narrow issues on appeal as:

> 1. *Did the District Court erroneously dismiss Tenants' appeal for failure to timely file an appellate brief before ruling on their justice court motion to proceed* in forma pauperis *for purposes of § 25-33-201, MCA?*
>
> 2. *Did the Justice Court erroneously enter a money judgment in excess of its $12,000 jurisdictional limit?*

¶2      We affirm on Issue 1 but reverse and remand on Issue 2 for entry of judgment in favor of Alto Jake Holdings, LLC (Landlord), in conformance with the jurisdictional limit for justice court money judgments.

## BACKGROUND

¶3      Tenants successively rented two mobile homes on adjoining properties, 1188 and 1190 Patrick Creek Road, in Kalispell, Montana, from Alto Jake Holdings, LLC.  Tenants assert that they executed a written, one-year lease agreement calling for them to rent the upper trailer (1188) during November and December 2015, and then to rent the lower trailer (1190) from January 2016 through October 2016.  James Sichting and his daughter, Amber Altig, were partners and the principals in Alto Jake Holdings, LLC.

2

¶4 On September 7, 2016, Landlord filed a statutory unlawful detainer action[1] in the Flathead County Justice Court for repossession of both trailers, $450 in back rent, compensation for property damage, costs, and attorney fees. On October 3, 2016, Tenants filed a *pro se* answer generally denying all complaint allegations and counterclaiming for $4,800 in restitution for previously paid rent, costs, and attorney fees. In support of their counterclaim, Tenants alleged that Landlord materially breached the lease agreement by allowing the lower mobile home to become uninhabitable due to freeze-broken pipes, a defective water filtration system, and non-functional sewage system. Tenants further alleged that the upper trailer had a "red tagged" electrical meter while they were living there prior to moving to the lower trailer. Tenants alleged that Landlord failed to restore water and sewer service to the lower trailer despite timely written and verbal notice of the problems.

¶5 At bench trial on October 17, 2016, Landlord presented testimony through Sichting, Altig, and hired handyman Brad Hoag. Sichting recalled the general terms of the parties' one-year lease agreement, but also testified that, due to memory loss, he could not clearly recall all related details and circumstances pertaining to the specific terms of the agreement. During the late fall and winter of 2015-16, Altig lived out-of-state and was not personally involved with the subject rental until she returned to Montana in April 2016. While Altig denied that Tenants had a one-year lease and contrarily asserted that they merely rented on an informal month-to-month basis, the Justice Court admitted a copy of the parties'

---

[1] *See* §§ 70-27-108 through -212, MCA.

executed lease agreement into evidence without objection. Altig testified that she first became aware of the water and sewer system problems in early April 2016. She asserted that the mobile home water system froze up only after Tenants unplugged the heat tape and space heater in the pump house. She also asserted that the trailers did not have a functioning water-filtration system only because Tenants removed or disconnected the system.

¶6 Handyman Hoag testified that Sichting hired him to make repairs on the upper trailer in early 2016 after Tenants had moved to the lower trailer in January. Hoag testified that he was able to restore water to the upper trailer but explained that the lack of filtration caused all faucets in both trailers to plug up with sand and pebbles. Hoag said that he discovered the main sewer pipe for the lower trailer had become disconnected and that other pipes in the sewage system were broken, causing an unsanitary mess. Hoag testified that the lower trailer was not worth fixing due to the degree of sewage contamination. Hoag estimated that Sichting hired him to work on the two trailers approximately six times during the winter of 2016. Over objection, the Justice Court admitted a list of damages presented by Altig as Exhibit M, which estimated the total cost of repairs to the trailers at $20,583. Under questioning from the court, Tenants acknowledged that they received Landlord's notice to vacate the lower trailer in August 2016 and subsequently moved out in September 2016. Before adjourning due to time constraints on the court docket, the Justice Court declared the rental agreement terminated due to Tenants' failure to pay rent and decreed that Landlord was entitled to immediate possession of the property.

¶7 On November 18, 2016, the matter came on for continuation of bench trial to address the merits of Landlord's damages claim and Tenants' counterclaims. Tenants did not appear. On Landlord's motion, the court dismissed Tenants' counterclaims with prejudice. Amber Altig again testified that Tenants caused extraordinary damage to both trailers by causing breakage of sewer piping in the lower trailer, which then allowed raw sewage to run downhill to a small pond on the property. She estimated $4,000 as the cost of tearing down and hauling away the contaminated lower trailer and an additional $8,000 to $9,000 as the cost of digging out and restoring the contaminated pond. Based on those estimates and the other figures in her previously admitted Exhibit M, including the cost of repairing the upper trailer, Altig estimated the "rough total" of Landlord's damages to be $20,583. At the close of trial, the Justice Court issued judgment against Tenants and awarded the Landlord damages, attorney fees, and costs in the amount of $21,950.

¶8 Just hours after the trial adjourned, Tenants moved to set aside the judgment on the asserted ground that they did not receive notice of the continued trial date. On December 6, 2016, on hearing on Tenants' motion, the Justice Court vacated its November 18th judgment on the ground that Tenants had properly updated their address of record and did not receive notice at their new address.

¶9 On December 7, 2016, the Justice Court issued an order, served by mail, resetting the continuation of bench trial for December 19, 2016. Four days before trial, on December 15, 2016, Tenants moved to continue the trial on the asserted grounds that: (1) they had insufficient time to prepare for trial because they did not receive notice of the December 19th trial until December 13th; (2) a Helena attorney had agreed to represent

5

them but needed time to review the case; and (3) Tenant Clemm was scheduled by her new employer to begin a 7-week training at the Teletech call center in Kalispell on December 19th and would forfeit her new job if she missed the first day of training. Landlord filed a response opposing the motion and the court took no action prior to the bench trial.

¶10    On December 19, 2016, the matter came on again for continuation of bench trial. Tenants both appeared. The Justice Court questioned Tenants about the status of the attorney who had purportedly agreed to represent them. Finding their explanation unsatisfactory, the court denied the motion to continue on the grounds that the attorney had yet to file a notice of appearance and that further delay would prejudice Landlord.[2] Upon denial of the motion, Tenants lamented that they were unsure how to proceed due to lack of sufficient time to prepare. Tenant Clemm asked the court, "Okay, so can I just let you go with whatever you granted them last time? . . . I am not prepared to represent myself or [Tenant Donham]." The court characterized Clemm's question as a motion to vacate the continuation of bench trial and inquired of Donham whether he agreed to have the court re-impose the prior judgment. Donham agreed. The Justice Court thus stated:

> Upon the defendant's motion to vacate this trial and re-impose the judgment that was awarded to the plaintiff after the hearing on November 18th, there being no objection to it, and I find good cause for it based on the record that was made at the hearing of November 18th, the defendants' motion is granted.

---

[2] The Justice Court made no findings as to the nature of the prejudice.

The Justice Court then adjourned proceedings and re-issued its November 18th judgment, re-dated December 19, 2016, and again awarded Landlord damages, attorney fees, and costs in the total amount of $21,950.

¶11 On January 18, 2017, Tenants timely filed a joint notice of appeal in the Justice Court, together with a motion and application to proceed *in forma pauperis*. By letter dated January 26, 2017, the Clerk of District Court notified the parties that the court received the Justice Court record and that the Uniform Municipal Rules of Appeal to District Court[3] (U. M. C. R. App.) governed the procedure on appeal. The Clerk's notice included copies of U. M. C. R. App. 12-14 and specifically referred the parties to the "deadlines set forth in" the attached rules. The notice warned: "No separate briefing schedule will be issued by the court." Tenants did not subsequently file an appellate brief or request an extension of their briefing deadline.

¶12 Almost one month later, on February 23, 2017, attorney Brian J. Miller filed a notice of appearance on Tenants' behalf in the District Court. On March 6, 2017, without reference to the previously expired briefing deadline, Tenants filed a cursory motion asking the District Court to set a briefing schedule. Later that same day, Landlord filed a motion for summary dismissal of the appeal pursuant to U. M. C. R. App. 14(c). The motion asserted that the briefing deadline specified by U. M. C. R. App. 14(a) had expired and Tenants had yet to file an appellate brief. Two days later, on March 8, 2017, the District Court summarily dismissed Tenants' appeal pursuant to U. M. C. R. App. 14(c) on the

---

[3] Enacted by Sup. Ct. Ord. Mar. 19, 1998, eff. April 1, 1998, pursuant to Mont. Const. art. VII, § 2(3).

7

ground that, even giving them "the benefit of the doubt" by "adding an additional three days for mailing," Tenants' briefing deadline expired on February 13, 2017, without filing.

¶13 By motion filed March 20, 2017, Tenants moved the District Court to vacate its prior order of dismissal and set a new briefing schedule on the asserted grounds that: (1) the court prematurely ruled on Landlord's motion to dismiss prior to expiration of Tenants' response deadline under Uniform District Court Rule 2; (2) Tenants did not receive the court's January 26, 2017, notice of briefing deadlines until February 13, 2017, because the court incorrectly mailed the notice to Tenants' old address at 189 Kelly Road in Kalispell; and (3) Tenants requested the justice court "transcripts" on February 22, 2017, but did not receive them until March 7, 2017. By response filed April 3, 2017, Landlord objected on the ground that, contrary to Tenant Donham's affidavit assertion, the Justice Court record indicated 189 Kelly Road as Donham's last address with no record indication of any other current address or request for change of address. Three days later, on April 6, 2017, Tenants filed a notice of appeal to this Court.

**STANDARD OF REVIEW**

¶14 The district court functions as an intermediate appellate court upon an appeal from a justice court of record and the scope of district court review is "confined to review of the record and questions of law." Sections 3-5-303 and 3-10-115(1), MCA. On appeal to this Court, we review the justice court record independently of the district court as if appealed directly to this Court. *Stanley v. Lemire*, 2006 MT 304, ¶¶ 25-26, 334 Mont. 489, 148 P.3d 643. Thus, we review court findings of fact for clear error, conclusions of law de novo, discretionary rulings for an abuse of discretion, and mixed questions of law and fact de

8

novo. We review a district court's dismissal of a lower court appeal for failure to timely prosecute the appeal for an abuse of discretion. *State v. Frazier*, 2005 MT 99, ¶ 8, 326 Mont. 524, 111 P.3d 215; § 25-33-305, MCA; U. M. C. R. App. 14(c).

**DISCUSSION**

¶15 *1. Did the District Court erroneously dismiss Tenants' appeal for failure to timely file an appellate brief before ruling on their justice court motion to proceed* in forma pauperis *for purposes of § 25-33-201, MCA?*

¶16 Based on the assertion that § 25-33-201, MCA, first required the District Court to take notice of and rule on their still-pending justice court motion to proceed *in forma pauperis*, Tenants assert that the District Court was without jurisdiction to proceed with briefing on appeal under U. M. C. R. App. 14.[4] Tenants do not raise on appeal any of the asserted grounds for relief raised in their March 20, 2017 motion to set aside the district court's order of dismissal.[5] Tenants' reliance on § 25-33-201, MCA, as the threshold jurisdictional lynchpin for their assertion of error necessarily requires analysis of the pertinent provisions of Title 25, chapter 33, MCA, and the Uniform Municipal Rules of Appeal to District Court governing appeals from justice courts of record.

---

[4] In dismissing the appeal for failure to timely file an appellate brief, the District Court also concluded *sua sponte* that Tenants failed to perfect their appeal by either filing a sufficient undertaking or moving for an *in forma pauperis* waiver, as required by § 25-33-201(1) and (4), MCA. While that conclusion is not consistent with this Opinion as an alternative or supplemental ground for dismissal on this record, we need only address the court's primary ruling within the narrow framework of the jurisdictional issue raised on appeal.

[5] Though framed as a generic motion to vacate without reference to any underlying authority for post-judgment relief, Tenants' motion to set aside was, in essence, a motion to vacate the prior judgment pursuant to M. R. Civ. P. 60(b)(1) (relief from judgment based on mistake, surprise, or excusable neglect).

9

¶17    The Flathead County Justice Court is a justice court of record, as defined by § 3-10-101(5), MCA.  In contrast to appeal by trial de novo, the exclusive manner of appeal from a justice court of record is appeal on the record.  Sections 3-10-115, 25-33-101, and -301(3), MCA.[6]  The U. M. C. R. App. and §§ 25-33-101 through -306, MCA, as applicable to justice courts of record, govern the procedure on appeal from justice courts of record.  *Frazier*, ¶ 8; §§ 3-10-115(4) and 25-33-101, MCA.  Regardless of whether a justice court is a court of record, a party seeking to appeal an adverse judgment in a civil case must first file a notice of appeal in justice court within 30 days of entry of the judgment.  U. M. C. R. App. 4, 5(a)(1); §§ 25-33-101 through -103, MCA.  When the judgment is a money judgment, the appeal "is not effectual for any purpose unless" the appellant also files "an undertaking" with two or more sureties, in a sum equal to twice the amount of the judgment, including costs.  U. M. C. R. App. 5(a)(2), 6(a)(1) and (4); §§ 25-33-201(1) and (4), MCA.[7]  At the time of filing the notice of appeal, the appellant must pay a justice court filing fee for the notice of appeal and undertaking, verification of sureties, and transmittal of the justice record to district court.  Section 25-31-112(5), MCA.  However, a person unable to pay the filing fee or cost of the undertaking may file a motion

---

[6] Prior to the relatively recent advent of lower courts of record in 1991 and 2003, the exclusive manner of appeal from justice courts to district courts was by trial de novo rather than appeal on the record.  Sections 25-33-101 and -301, MCA; *see also* Mont. Const. art. VII, § 4(2) (district courts "shall hear appeals from inferior courts as trials anew unless as otherwise provided by law"); 1889 Mont. Const. art. 8, § 11 (district courts "have appellate jurisdiction in such cases arising in justices and inferior courts . . . as may be prescribed by law"); § 3-5-303, MCA (district courts have "appellate jurisdiction in cases arising in justices' courts and other courts of limited jurisdiction . . . as may be prescribed by law and consistent with the constitution").

[7] The appellant may alternatively deposit money in lieu of filing a security.  U. M. C. R. App. 8(b); § 25-33-205, MCA.

10

in justice court to proceed *in forma pauperis*. U. M. C. R. App. 6(a)(1) and (4), 11(a); §§ 25-10-404(1), 25-31-113, and 25-33-201(1), (5), MCA. A motion to proceed *in forma pauperis* is a request for waiver of filing fees, the undertaking requirement, and costs on appeal in the form of an affidavit stating that the appellant has a non-frivolous appeal and is unable to afford those costs. U. M. C. R. App. 11(a); § 25-10-404(1), MCA.

¶18 If the justice of the peace is available and grants the waiver request upon timely presentation of a notice of appeal, the justice court must file the notice of appeal and the appeal must proceed as if the appellant had paid the justice court filing fee and filed the required undertaking. U. M. C. R. App. 6(a)(1), 11(a); § 25-10-404(1) and (2), MCA; *see also* §§ 25-31-113 and 25-33-201(1), MCA. If the justice of the peace is not available to rule on the waiver, the justice court must likewise file the notice of appeal and, "subject to subsequent approval" of the waiver request by the district court, the appeal must proceed as if the appellant had paid the justice court filing fee and filed the required undertaking. Section 25-10-404(2), MCA; *see also* U. M. C. R. App. 6(a)(1) and (4); §§ 25-31-113, and 25-33-201(1), (5), MCA.[8] If the justice of the peace denies the waiver request on an appeal from a justice court of record, the appellant must either pay the justice court filing fee and

---

[8] In contrast to § 25-10-404(2), MCA (expressly addressing effect of the non-availability of a justice of the peace to timely rule on a motion to proceed *in forma pauperis*), the U. M. C. R. App. include no similar express provision addressing the effect of no ruling by the justice court. *See* U. M. C. R. App. 11 (addressing effect of grant or denial without reference to effect of non-ruling).

file the required undertaking or refile the waiver motion in district court within 10 days of the denial. U. M. C. R. App. 11.[9]

¶19    Given the particular and limited jurisdiction of justice courts and the limited appellate jurisdiction of district courts, we have long held that strict compliance with the statutory notice of appeal and undertaking requirements are necessary to vest the district court with appellate jurisdiction in each case. *Berry v. Seman*, 245 Mont. 335, 337, 801 P.2d 589, 590 (1990); *Adams v. Crismore*, 211 Mont. 245, 248-49, 683 P.2d 497, 499 (1984); *State ex rel. Gregory v. District Court*, 86 Mont. 396, 398, 284 P. 537, 537-38 (1930); *Jenkins v. Carroll*, 42 Mont. 302, 313, 112 P. 1064, 1069 (1910) (citing *McCauley v. Jones*, 35 Mont. 32, 88 P. 572 (1907)); and *State ex rel. Hall v. District Court*, 34 Mont. 112, 85 P. 872 (1906)).  Based on this jurisdictional threshold, record and non-record justice courts have no duty to transmit the record on appeal to district court unless and until the appellant perfects the appeal by timely complying with the notice of appeal and undertaking requirements of U. M. C. R. App. 4, 5(a)(1), 6(a)(1); §§ 25-33-101 through -103, and -201(1), MCA.  U. M. C. R. App. 10(a) and (c); § 25-33-104, MCA. Consequently, jurisdiction over an appeal generally does not vest in the district court until the justice court transmits the justice court record upon perfection of the appeal in justice court. *See* U. M. C. R. App. 10(c), (h), and 14(a); § 25-33-104, MCA; *Berry*, 245 Mont.

_____

[9] No similar post-denial right to refile the fee waiver request in the district court is expressly available on appeal from a non-record justice court. *See* §§ 25-10-404(2), 25-31-113, and 25-33-201(1), MCA; *but see* § 25-33-201(4), MCA ("[w]hen the appealing party is determined by the court to be indigent, the district court shall waive the undertaking requirements").

at 337, 801 P.2d at 590.[10]  The dispositive issue here is whether, and to what extent, the timely filing of a motion to proceed *in forma pauperis* satisfies the undertaking requirements of U. M. C. R. App. 6 and § 25-33-201, MCA, sufficient to vest the district court with jurisdiction over an appeal.

¶20    In that regard, Tenants timely filed a notice of appeal, and accompanying motion to proceed *in forma pauperis*, in justice court in accordance with U. M. C. R. App. 4, 5(a)(1), and 6(a)(1); §§ 25-10-404(1), 25-31-113, 25-33-101 through -103, -201(1), (5), MCA.  The justice court timely transmitted the record to the district court "subject to subsequent approval" of the fee waiver request.  U. M. C. R. App. 6(a)(1) and (4), 10(a) and (c); §§ 25-10-404(2), 25-31-113, and 25-33-201(1), (4), MCA.  Thus, subject to subsequent approval of Tenants' fee waiver request pursuant to § 25-10-404(2), MCA, the district court acquired jurisdiction over the appeal on January 24, 2017, on receipt and filing of the justice court record.  U. M. C. R. App. 10(c) and (h); § 25-33-104, MCA; *Berry*, 245 Mont. at 337, 801 P.2d at 590.

¶21    The clerk of district court "shall notify the parties in writing" of the filing date of the justice record.  U. M. C. R. App. 10(c).  The clerk may serve the notice by mail or personal service.  U. M. C. R. App. 12(c).  "Service by mail is complete on mailing."  U. M. C. R. App. 12(c).  Unless otherwise ordered by the district court, "the appellant shall serve

---

[10] If a justice court fails to timely transmit the record on perfection of the appeal, district courts may compel the justice court to transmit the record.  Section 25-33-104, MCA.  Perfection of the appeal in justice court also requires the justice court to stay any pending execution on the judgment and allows the adverse party to timely "except to the sufficiency of the sureties," thereby requiring the appellants to file an affidavit verifying their ability satisfy the bond subject to the approval of the justice or district court.  U. M. C. R. App. 7 and 8(a); §§ 25-33-203 and -204, MCA.

and file a brief within 15 days after the date on which the record is filed." U. M. C. R. App. 14(a). If the clerk serves notice of filing of the justice court record to the parties by mail, the filing deadline for the appellant's brief is 18 days after the date of filing of the justice court record in district court. U. M. C. R. App. 14(a), 20(c).

¶22 Here, the District Court received and filed the justice record on appeal on January 24, 2017. By correspondence mailed two days later to the parties' respective addresses of record in the justice court record, the Clerk of District Court notified the parties in writing of the court's receipt of the justice court record and that the U. M. C. R. App. governed the procedure on appeal. The notice included copies of U. M. C. R. App. 12-14 (requirements for filing, service, and form of briefs and briefing deadlines) and referred the parties to the "deadlines set forth in" the attached rules. The notice clearly and unequivocally warned that: "No separate briefing schedule will be issued by the court." The clerk's notice of the filing date of the record and the parties' briefing deadlines was clear, unequivocal, and complete on mailing.

¶23 "If [the] appellant fails to file a brief within the time provided" by Rule 14(a) or as otherwise extended by the court, "the appeal shall be deemed without merit and subject to summary dismissal by the district court." U. M. C. R. App. 14(c). Absent an abuse of discretion, "we will not reverse a district court for insisting that the parties . . . timely comply" with the briefing deadlines specified by U. M. C. R. App. 14(a). *Frazier*, ¶ 9. Despite due notice of the filing deadline mailed to their last address of record, Tenants' neither filed a brief nor requested a time extension upon a showing of good cause. Well after expiration of the briefing deadline, when Tenants appeared through new counsel on

14

February 23, 2017, Tenants again failed to file a brief or seek a time extension. Even when counsel subsequently filed a motion requesting a briefing schedule on March 6, 2017, the motion made no reference to the expired briefing deadline, much less an asserted showing of good cause for a belated time extension. Though Tenants subsequently attempted to assert good cause for not complying with their briefing deadline in their March 20, 2017 motion to set aside the court's order of dismissal, Tenants do not appeal on any of those grounds here.[11] Under these circumstances, Tenants have failed to show that the District Court abused its discretion in summarily dismissing the appeal pursuant U. M. C. R. App. 14(c).

¶24     In reliance on *Dime Ins. Agency v. Johnson & ISC Distributors*, 279 Mont. 121, 926 P.2d 733 (1996), Tenants assert that, regardless of an otherwise valid basis for dismissal pursuant to U. M. C. R. App. 14(c), the district court did not have jurisdiction over the appeal, and thus the U. M. C. R. App. 14(a) briefing deadline could not begin to run, until the court ruled on Tenants' previously filed fee waiver request. In *Dime Ins.*, we considered whether an appellant's failure to file an undertaking within 30 days of the date of the justice court judgment prevented the district court from acquiring jurisdiction to proceed to on appeal. *Dime Ins.*, 279 Mont. at 123-24, 926 P.2d at 734-35. While recognizing the long-settled rule that the district court does not acquire jurisdiction over an appeal unless and until the appellant has complied with the statutory notice of appeal and undertaking

---

[11] A premature ruling prior to expiration of a party's response time under Uniform District Court Rule 2 is a non-jurisdictional procedural defect subject to waiver. *See Stanley*, ¶¶ 37-38.

requirements, we held only that, read to together in context, §§ 25-33-103, -201, and -207, MCA, allowed the appellant to file the required undertaking at any time prior to the hearing on a motion to dismiss filed by the appellee in district court. *Dime Ins.*, 279 Mont. at 126-27, 926 P.2d at 736-37.[12] Unlike here, *Dime Ins.* did not consider the effect of the continued pendency of a justice court motion to proceed *in forma pauperis* on the district court's acquisition of jurisdiction over an appeal. Thus, *Dime* is distinguishable and of no consequence here.

¶25 Nonetheless, we again recognize and reaffirm the longstanding general rule that the district court does not acquire jurisdiction to proceed with an appeal unless and until an appellant timely complies with the statutory requirements for filing a notice of appeal and an undertaking on appeal. However, the undertaking requirement is expressly subject to an indigency-based waiver. U. M. C. R. App. 6(a)(1) and (4); § 25-33-201(1), (5), MCA. Moreover, if the justice court is unable to timely rule on a motion to proceed *in forma pauperis*, the appeal must proceed as if the appellant had timely paid required fees and filed the required undertaking "subject to subsequent approval" of the appellant's fee waiver request by the district court. *See* § 25-10-404(1), (2), MCA; *see also* U. M. C. R. App. 6(a)(4); § 25-33-201(5), MCA.

¶26 In accordance with § 25-10-404(1) and (2), MCA, and in the current absence of a more specific statutory or rule provision to the contrary, a district court's failure to rule *sua*

---

[12] *But see Goldsmith v. Lane*, 226 Mont. 341, 343, 735 P.2d 306, 308 (1987) (question of the sufficiency or insufficiency of an undertaking cannot arise until the appellant actually files an undertaking), *overruled by Dime Ins.*, 279 Mont. at 124-26, 926 P.2d at 735-36.

*sponte* on a pending waiver request previously filed in justice court does not preclude acquisition or retention of district court jurisdiction to proceed with briefing on appeal upon transmittal of the justice court record. Rather, pursuant to § 25-10-404(1) and (2), MCA, the district court acquires jurisdiction on transmittal of the justice court record and may proceed on appeal subject to subsequent ruling on the pending waiver request prior to entry of final judgment on appeal. Upon acquisition of jurisdiction on filing of the justice court record, the district court may rule on the pending indigency waiver request: (1) on motion of the adverse party pursuant to § 25-33-207, MCA; (2) on the appellant's renewed motion or request for ruling pursuant U. M. C. R. App. 6(a)(4) and 11(b) and § 25-10-404(1) and (2), MCA; or (3) *sua sponte*. Here, pursuant to U. M. C. R. App. 6(a)(1) and (4) and §§ 25-10-404(1), (2) and 25-33-201(1), (4), MCA, the district court acquired jurisdiction over the appeal on filing of the justice court record subject to subsequent approval of the pending waiver request prior to entry of final judgment on appeal. Landlord, the only party with standing to contest Tenants' request for waiver of the undertaking requirement, did not object to the request prior to entry of final judgment on appeal. Thus, regardless of the continued pendency of Tenants' justice court motion to proceed *in forma pauperis*, the District Court had jurisdiction to proceed with briefing on appeal pursuant to U. M. C. R. App. 14. We hold that the District Court did not err, due to lack of jurisdiction, in dismissing Tenants' appeal pursuant to U. M. C. R. App. 14(c) prior to ruling on their previously filed motion to proceed *in forma pauperis*.

17

¶27   *2.  Did the Justice Court erroneously enter a money judgment in excess of its $12,000 jurisdictional limit?*

¶28   Tenants did not object here or below that the amount of the Justice Court judgment exceeded the jurisdictional limit for justice courts.  However, subject matter jurisdiction is the threshold power and authority of a court to hear and determine a claim or issue.  *Ballas v. Missoula City Bd. of Adjustment*, 2007 MT 299, ¶¶ 15-16, 340 Mont. 56, 172 P.3d 1232 (distinguishing subject matter jurisdiction from standing); *Stanley*, ¶ 30.  Montana courts acquire jurisdiction only as conferred by the Montana Constitution or statutes enacted in conformance with the Constitution.  *Stanley*, ¶ 52.  While the failure to timely object generally waives non-jurisdictional procedural defects, "lack of subject matter jurisdiction cannot be waived, and may be raised at any stage of a judicial proceeding by a party or sua sponte" by the trial or appellate court.  *Stanley*, ¶¶ 31-32 (courts cannot acquire subject matter jurisdiction by consent of the parties and trial and appellate courts have an independent duty "to determine whether subject-matter jurisdiction exists" *sua sponte*); *Sage v. Gamble*, 279 Mont. 459, 463, 929 P.2d 822, 824 (1996) (lack of subject matter jurisdiction cannot be waived); *O'Donnell v. Ryans, Inc.*, 227 Mont. 48, 49, 736 P.2d 965, 966 (1987).  Accordingly, we review *sua sponte* on appeal in this matter whether the amount of the Justice Court judgment exceeded the jurisdictional limit for justice court money damages awards.

¶29   As courts of limited jurisdiction strictly prescribed by statute, justice courts have no jurisdiction in civil actions to award money damages in excess of $12,000, exclusive of courts costs and attorney fees.  Section 3-10-301, MCA.  The jurisdictional limits specified

by § 3-10-301, MCA, are express limits on the subject matter jurisdiction of justice courts. Here, based on the evidence of the "rough total" of damages claimed by the Landlord, the Justice Court awarded $20,524 to Alto Jake Holdings, LLC, exclusive of costs and attorney fees. Adding in claimed costs and statutory attorney fees in the amount of $1,426, the Justice Court issued judgment against Tenants in the total amount of $21,950. The $20,524 compensatory damages award exceeded the Justice Court's $12,000 jurisdictional limit by $8,524. Thus, regardless of Tenants' lack of objection below or on appeal to this Court, the Justice Court erred by awarding a money judgment $8,524 in excess of its $12,000 jurisdictional limit.

## CONCLUSION

¶30    We hold that the District Court did not err, due to lack of jurisdiction, in dismissing Tenants' appeal pursuant to U. M. C. R. App. 14(c) prior to ruling on their previously filed motion to proceed *in forma pauperis*. However, we hold that the Justice Court erred by awarding a money judgment $8,524 in excess of the court's $12,000 jurisdictional limit. Therefore, we hereby reverse and remand for entry of a corrected judgment against Tenants in the total amount of $13,426, constituting $12,000 in compensatory damages and $1,426 in costs and attorney fees.

¶31    Affirmed in part, reversed in part, and remanded.

/S/ DIRK M. SANDEFUR

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ JIM RICE